# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

H. KENNETH LEFOLDT, JR.                                              PLAINTIFF

V.                                            CIVIL ACTION NO. 5:15-CV-96-KS-MTP

DONALD RENTFRO, *et al.*                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** the Motion to Stay [23] pending arbitration filed by Defendant Horne, LLP, and **grants** the Motions to Dismiss [38, 40, 48] filed by the individual Defendants.

## I. BACKGROUND

This case involves claims of professional malpractice and breach of fiduciary duty arising from the bankruptcy of a community hospital. Natchez Regional Medical Center ("NRMC") filed a Voluntary Petition for Relief pursuant to Chapter 9 of the bankruptcy code. The Bankruptcy Court confirmed NRMC's Chapter 9 plan [1-1], appointed Plaintiff as Trustee, and conferred upon him the right to pursue all claims, demands, an causes of action belonging to NRMC.

Plaintiff sued NRMC's former officers and members of its Board of Trustees for breach of fiduciary duty, and he alleged that Horne, LLP committed professional malpractice. Plaintiff alleges that the Officer Defendants were grossly negligent in their duties, failing to bill patients for services rendered, respond to federal audits, or oversee credentialing of doctors, among other alleged misfeasances. He alleges that the Board Defendants abdicated their responsibility to oversee NRMC's officers. Finally,

Plaintiff alleges that Horne, LLP was hired to audit NRMC's finances but failed to meet the requisite standard of professional care. Defendants filed several motions, and they are all ripe for review.

## II. MOTION TO STAY PENDING ARBITRATION [23]

First, Horne filed a Motion to Stay [23] all claims against it pending the completion of arbitration. Although Horne did not specifically request that the Court compel Plaintiff to arbitrate, such relief is implicit to its motion. The Court employs a two-step analysis to determine whether a party should be compelled to arbitrate. *JP Morgan Chase & Co. v. Conegie,* 492 F.3d 596, 598 (5th Cir. 2007). First, the Court must "ascertain whether the parties agreed to arbitrate the dispute." *Id.* This requires "two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (punctuation omitted). If the parties agreed to arbitrate, the Court "must determine whether any federal statute or policy renders the claims nonarbitrable." *Id.*

First, Defendant argues that an arbitrator, rather than the Court, must decide whether the parties agreed to arbitrate. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this

2

additional arbitration agreement just as it does on any other." *Id.* at 70. Therefore, agreements to arbitrate such threshold issues are "valid under § 2 save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* However, a "heightened standard" of review applies to these threshold determinations; "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 69 n.1 (punctuation omitted); *see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014).

Therefore, to determine whether the parties agreed to arbitrate the threshold question of whether there exists an arbitration agreement, the Court must first determine whether there was an agreement and what its terms were – the very questions that Horne contends an arbitrator must answer. In this respect, the threshold question of arbitrability is subsumed by the primary question of whether there is a valid agreement to arbitrate between the parties. That being the case, the Court will proceed with the general arbitration analysis.[1]

---

[1] When applied to the issue of whether parties agreed to arbitrate the question of whether an arbitration agreement exists, this adjudicatory framework is somewhat absurd. In virtually all cases, a respondent's objections to enforcement of an antecedent agreement to arbitrate the threshold question of whether the parties agreed to arbitrate will mirror its objections to enforcement of the arbitration agreement itself, and the Court ends up addressing the very issue that the movant contends the parties agreed to arbitrate. The undersigned judge respectfully suggests that a more efficient and logical approach would be to leave all questions concerning the *existence* of an arbitration agreement to the court, while other questions of arbitrability – such as the scope of the arbitration agreement – may be delegated to an arbitrator.

The parties' core dispute is whether there exists an agreement to arbitrate. Horne argues that NRMC – through its CFO, Defendant Mock – executed letters of engagement [23-1, 23-2] with Horne which contained arbitration provisions and constituted valid and binding contracts. In response, Plaintiff contends that the engagement letters are not binding on NRMC because their terms were not spread upon the minutes of NRMC's Board of Trustees.

"Generally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate." *Conegie*, 492 F.3d at 598. The board of trustees of a community hospital "shall keep minutes of its official business . . . ." MISS. CODE ANN. § 41-13-35(3). "A community hospital board of trustees, as does any public board in the State of Mississippi, speaks and acts only through its minutes," and "where a public board engages in business with another entity, no contract can be implied or presumed . . . ." *Wellness, Inc. v. Pearl River County Hospital*, 178 So. 3d 1287, 1290-91 (Miss. 2015). Rather, "it must be stated in express terms and recorded on the official minutes and the action of the board." *Id.* at 1291. Even if the entire contract is not recorded in the board's minutes, "it may be enforced where enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." *Id.*

It appears to be undisputed that the Board's engagement of Horne was only addressed in the Board's minutes from August 12, 2009, and September 2, 2009. The August 2009 minutes [34-1] provide, in pertinent part:

4

> Charles Mock reported that he had received a proposal for the annual audit for a one year contract from the Horne CPA Group of Jackson, Mississippi. Mr. Bland asked if other bids were taken and Mock reported that only one bid had been received and that from Horne. No action was taken at this time. Mr. Bland asked Mr. Mock to approach Horne again to request they consider not increasing their bid from the prior year.

The September 2009 minutes [34-2] provide, in pertinent part:

> C. Mock presented the bids for auditor with Horne CPA group costing 48,000.00 and BKD CPA costing 58,000.00 plus expense charges including travel, report processing, etc.
>
> R. Grennell made the motion to accept Horne CPA Group audit bid with B. Pyron seconding the motion. The motion passed unanimously by the Board to accept the Horne CPA Group audit bid at $48,000.00.

The parties have not directed the Court to any further terms of NRMC's contract with Horne contained in the Board's minutes.

These minute entries contain no mention of arbitration. Therefore, the Court may "not draw an enforceable arbitration clause from such general, imprecise language." *Id.* at 1292. As the Mississippi Supreme Court has clearly held, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* "A community hospital board of trustees . . . speaks and acts only through its minutes." *Id.* at 1290. As the NRMC Board's minutes contain neither an arbitration agreement nor terms sufficient to infer such an agreement, no such agreement exists. *Id.* at 1292; *see also Urban Developers LLC v. City of Jackson*, 468 F.3d 281, 300 (5th Cir. 2006); *Pike County v. Indeck Magnolia, LLC*, 866 F. Supp. 2d 589, 591-93 (S.D. Miss. 2012).

Horne presented a number of arguments which the Court must briefly address.

5

First, Horne generally argues that Plaintiff may not seek to enforce the parties' contract with respect to Horne's professional obligations to NRMC while simultaneously denying the parties' agreement to arbitrate. The terms contained within the Board's minutes may be sufficient to create a contract for auditing services despite being insufficient to create an obligation to arbitrate. The present motion only requires the Court to address whether the parties agreed to arbitrate, and the Court expresses no opinion as to whether the terms contained in the Board's minutes are sufficient to impose any other contractual obligations on any party.[2]

Next, Horne argues that Plaintiff is bound by the allegations in the Complaint [1] that NRMC engaged it to provide auditing services for the hospital from 2008 moving forward. Indeed, "[f]actual assertions in the complaint are judicial admissions conclusively binding on the plaintiff." *Kiki Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 550 (5th Cir. 2009). However, Plaintiff only asserted that NRMC's Board engaged Horne to provide auditing services for the hospital. Plaintiff did not assert the specific terms of the agreement, or that it contained an arbitration provision. Plaintiff may admit that a contract existed while disputing that it contained an arbitration provision.

---

[2]Likewise, it is not necessary for the Court to address Plaintiff's argument that he asserts a common-law claim for breach of a professional standard of care, as opposed to a contractual claim; Horne's argument that Plaintiff's malpractice claim must be dismissed in the absence of a valid contract; Horne's argument regarding Plaintiff's lack of standing to assert a malpractice claim in the absence of a contract; or Horne's argument that the Court must dismiss Plaintiff's malpractice claims in the absence of a valid contract.

Finally, Horne argues that Plaintiff should be equitably estopped from claiming any benefits from the contract while eschewing its obligation to arbitrate. However, "the minutes requirement is to be strictly adhered to, even where doing so would result in apparent injustice." *Indeck Magnolia*, 866 F. Supp. 2d at 592. "[S]uch contracts when so entered upon the minutes may not be varied by parol nor altered by a court of equity." *Urban Developers*, 468 F.3d at 300; *see also Warren County Port Com. v. Farrell Constr. Co.*, 395 F.2d 901, 904 (5th Cir. 1968).[3]

For these reasons, the Court **denies** the Motion to Stay [23] pending arbitration filed by Defendant Horne, LLP.

### III. MOTION TO DISMISS [38] (OFFICER DEFENDANTS)

Defendants Donald Rentfro, Charles Mock, and William Heburn are former officers of NRMC. They filed a Motion to Dismiss [38] and argued, among other things, that they can not be held personally liable for Plaintiff's claims under the Mississippi Tort Claims Act ("MTCA"). MISS. CODE ANN. § 11-46-1, *et seq*. The MTCA "provides the exclusive remedy against a governmental entity or its employees for the act or omission which gave rise to the suit." *Covington Cnt. Sch. Dist. v. Magee*, 29 So. 3d 1, 4 (Miss. 2010). Plaintiff's claims against Defendants Rentfro, Mock, and Heburn arise from the performance of their duties as employees of NRMC. Accordingly, Defendants argue that Plaintiff's claims must be analyzed under the MTCA. In response, Plaintiff argues

---

[3]*But see Mayor of Clinton v. Welch*, 888 So. 2d 416, 424-27 (Miss. 2004) (in decision limited to the specific facts presented, the court held that a municipality was equitably estopped from enforcing an ordinance because its agent granted a variance, despite no mention of such in the minutes).

7

that the MTCA does not apply because the Mississippi legislature intended it to protect public employees from certain claims by *private* individuals, not claims asserted by the public entity which employed them.

The MTCA affirms the sovereign immunity of Mississippi and its political subdivisions. MISS. CODE ANN. § 11-46-3(1). The State waived its sovereign immunity only to the extent provided by the Act. MISS. CODE ANN. § 11-46-5(1). As noted above, the MTCA provides the "exclusive remedy against a governmental entity or its employee for the act or omission which gave rise to the suit." *Magee*, 29 So. 3d 1; *see also* MISS. CODE ANN. § 11-46-7(1). "[N]o employee may be held personally liable for acts or omissions occurring within the course and scope of the employee's duties," but an employee is "not . . . considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." MISS. CODE ANN. § 11-46-7(2). Community hospitals, such as NRMC, are "political subdivisions" of the State, MISS CODE ANN. § 11-46-1(i), and their employees, therefore, may not "be held personally liable for acts or omissions occurring within the course and scope of . . . employment . . . ." MISS. CODE ANN. § 11-46-7(2).

According to the plain text of the MTCA, Plaintiff's claims against the Officer Defendants fall within its scope. The Act plainly states that it provides the "exclusive remedy against a governmental entity *or its employee* for the act or omission which gave rise to suit," MISS. CODE ANN. § 11-46-7(1) (emphasis added), and that "no

8

employee may be held personally liable for acts or omissions occurring during the course and scope of the employer's duties . . . ." MISS. CODE ANN. § 11-46-7(2). The MTCA does not provide that the suit against a governmental entity or its employees must be filed by a private individual for its strictures to apply, nor does it require that the government employer be named a defendant with the individual employee. Here, Plaintiff claims that Defendants Rentfro, Mock, and Heburn – employees of a political subdivision of the State – breached their fiduciary duty to that political subdivision by failing to competently perform their duties. That is indisputably a claim asserted against employees of a political subdivision arising from acts or omissions occurring with the course and scope of their employment.

Plaintiff argues that the Court should apply the statute in accordance with the intent of the legislature, rather than in accordance with its plain text. In support of this argument, Plaintiff cites *Natchez Regional Medical Center v. Quorum Health Resources, LLC*, No. 5:09-CV-207-DCB-JMR, 2010 WL 3324955 (S.D. Miss. Aug. 20, 2010). NRMC had entered into a management agreement with Quorum Health Resources ("QHR") to provide hospital management services. *Id.* at *1. NRMC sued QHR, alleging that it breached the agreement and committed a number of other torts, including fraud, negligence, and fraudulent transfers of funds. *Id.* QHR argued that it was an instrumentality of the hospital and, therefore, entitled to the protections of the MTCA. *Id.* at *2. In response, NRMC argued that the MTCA did not apply to suits against private parties by a political subdivision. *Id.* at *3.

Judge Bramlette noted that the legislature's "intent in enacting the MTCA was

9

'to immunize the state and its political subdivisions from any *tortious* breach of implied term or condition of any contract' as well as 'any wrongful or tortious act or omission.'" *Id.* (citing *City of Grenada v. Whitten Aviation, Inc.*, 755 So. 2d 1208, 1213 (Miss. Ct. App. 1999); MISS. CODE ANN. § 11-46-3). He observed that the "MTCA is the sole vehicle through which a private individual may sue the State of Mississippi, government entities, political subdivisions of the state, or employees of the state acting in the course and scope of their employment for alleged tortious acts." *Id.* (citing MISS. CODE ANN. § 11-46-7). He also noted that there was "no authority for applying the MTCA to a case in which the state is suing a private corporation." *Id.* Therefore, he concluded that QHR was not an instrumentality of the state because it was "being sued by a community hospital and not by a private individual." *Id.* at *4.

Although the facts of *NRMC v. QHR* are not on all fours with those of the present case, Judge Bramlette's reasoning is certainly persuasive. Moreover, the undersigned judge agrees with Plaintiff that it is unlikely the Mississippi legislature intended for the MTCA act to apply to claims asserted by a political subdivision of the state against its own employees. But a "purposivist approach to statutory interpretation is at odds with the strict textual approach applicable under Mississippi law when the text is unambiguous." *Parker v. Leaf River Cellulose, LLC*, 621 F. App'x 271, 273 (5th Cir. 2015). This Court's job "is not to decide what a statute should provide, but to determine what it does provide" and "apply the plain meaning of unambiguous statutes." *Desoto County v. Dennis*, 160 So. 3d 1154, 1156 (Miss. 2015). "[T]he MTCA is a legislative, not judicial creation. The function of creating a public

policy is primarily one to be exercised by the Legislature and not by the courts." *Watts v. Tsang*, 828 So. 2d 785, 792-93 (Miss. 2002). This principle of judicial restraint is even more important when a federal court is called upon to interpret a state statute. *Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 277 (5th Cir. 2015) (citing federalism concerns, and the danger of a federal court encroaching on a state legislature's function). Even if the statute were ambiguous and the Court were permitted to consult parol sources,[4] Plaintiff did not cite to any legislative history or other parol evidence of legislative intent.

"Whatever the legislature says in the text of the statute is considered the best evidence of the legislative intent." *MDOT v. Allred*, 928 So. 2d 152, 155 (Miss. 2006); *see also CTS Corp. v. Waldberger*, 134 S. Ct. 2175, 2185, 189 L. Ed. 2d 62 (2014) ("Congressional intent is discerned primarily from the statutory text."). Indeed, "[t]o be governed by legislated text rather than the legislators' intentions is what it means to be a 'Government of laws, not of men.'" *Zuni Public Sch. Dist. No. 89 v. Dept. of Educ.*, 550 U.S. 81, 119, 127 S. Ct. 1534, 167 L. Ed. 2d 449 (2007) (Scalia, J. dissenting). If the Mississippi legislature intended to limit the applicability of the MTCA to claims brought by private parties, it should have said so in the statute. It did not. Therefore, the Court finds that Plaintiff's claims against Defendants Rentfro,

---

[4] *See Virk v. Miss. Dep't of Revenue*, 133 So. 3d 809, 814 (Miss. 2014) (if statute is "unambiguous, its plain meaning should be applied, but if it is ambiguous, rules of statutory construction should be used to determine its legislative intent."); *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (Miss. 2009) ("This Court will not engage in statutory interpretation if a statute is plain and unambiguous.").

Mock, and Heburn may fall within the scope of the MTCA.

As recited above, the MTCA provides that "no employee [of a political subdivision] may be held personally liable for acts or omissions occurring within the course and scope of the employee's duties," but an employee is "not . . . considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." MISS. CODE ANN. § 11-46-7(2). It is undisputed that Defendants' alleged tortious acts and omissions occurred within the course and scope of their duties as employees of NRMC, a political subdivision of the State of Mississippi. Plaintiff has not identified any allegation of conduct which constitutes fraud, malice, libel, slander, defamation, or a criminal offense. Accordingly, the Court finds that Plaintiff's breach of fiduciary duty claim is subject to the MTCA, and Defendants Rentfro, Mock, and Heburn are immune from personal liability for Plaintiff's claims against them. *See Hardy v. City of Senatobia*, No. 2:06-CV-81-P-A, 2007 U.S. Dist. LEXIS 81296, at *10 (N.D. Miss. Nov. 1, 2007). The Court grants their Motion to Dismiss [38].

Plaintiff contends that NRMC waived its sovereign immunity – and, by extension, that of its servants – by filing this lawsuit. Plaintiff cited no Mississippi law in support of this argument, instead citing to federal court decisions addressing the waiver of Eleventh Amendment immunity. Regardless, Plaintiff has not sued

Defendants in their representative capacities.[5] That being the case, it has not demonstrated why its alleged waiver should apply to them. Regardless, one may waive MTCA immunity by failing to "actively and specifically pursue" it "while participating in the litigation . . . ." *Aikens v. Whites*, 8 So. 3d 139, 141 (Miss. 2008). That is not the case here.

## IV. MOTION TO DISMISS [40] (BOARD DEFENDANTS)

Defendants Leroy White, John Serafin, Linda Godley, Lee Martin, William Ernst, and Dr. Jennifer Russ are former members of the Board of Trustees of NRMC. They filed a Motion to Dismiss [40] and argued, like the Officer Defendants, that they can not be personally liable for Plaintiff's claims under the MTCA. Plaintiff does not dispute that the Board Defendants' were "employees" of NRMC, as defined by MISS. CODE ANN. § 11-46-1(f), or that their alleged tortious acts and omissions occurred "within the course and scope of [their] employment" by NRMC. MISS. CODE ANN. § 11-46-7(2). Therefore, for the same reasons provided above, the Court finds that Defendants White, Serafin, Godley, Martin, Ernst, and Russ are immune from personal liability for Plaintiff's claims against them. The Court grants their Motion to Dismiss [40].

## V. MOTION TO DISMISS [48] (STEPTER)

---

[5]This would, of course, be absurd. Plaintiff stands in NRMC's shoes. *See Yaquinto v. Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001) ("[W]hen a trustee prosecutes a right of action derived from the debtor, the trustee stands in the shoes of the debtor."). If he were suing Defendants in their representative capacities, NRMC would be suing itself.

13

Defendant Lionel Stepter is a former member of the Board of Trustees of NRMC. He filed a Motion to Dismiss [40] and argued, like the other Defendants, that he can not be personally liable for Plaintiff's claims under the MTCA. For the same reasons provided above, the Court grants his motion [48].

## VI. CONCLUSION

For the reasons provided above, the Court **denies** the Motion to Stay [23] pending arbitration filed by Defendant Horne, LLP, and **grants** the Motions to Dismiss [38, 40, 48] filed by the individual Defendants. Plaintiff's claims against the individual Defendants – William Heburn, Charles Mock, Donald Rentfro, Leroy White, John Serafin, Linda Godley, Lee Martin, William Ernst, Dr. Jennifer Russ, and Lionel Stepter – are dismissed with prejudice.

SO ORDERED AND ADJUDGED, on this, the 11th day of April, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE