IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

H. KENNETH LEFOLDT, JR.                                                    PLAINTIFF

V.                                        CIVIL ACTION NO. 5:15-CV-96-KS-MTP

DONALD RENTFRO, *et al.*                                                DEFENDANTS

<u>ORDER</u>

For the reasons below, the Court **denies** Defendant Horne, LLP's Motion to Transfer [97] this case to another division.

Defendant Horne, LLP argues that the Court should transfer this case to the Eastern Division or Northern Division of this District pursuant to Rule 1404(a). This Court has previously applied Section 1404(a) to determine the propriety of an intra-district transfer. *See, e.g. Green v. Nationwide Mut. Ins. Co.*, No. 2:11-CV-226-KS-MTP, 2012 U.S. Dist. LEXIS 193744, at *4 (S.D. Miss. Mar. 29, 2012); *Parsons v. Pearl River County*, No. 2:09-CV-72-KS-MTP, 2009 U.S. Dist. LEXIS 51128, at *5 (S.D. Miss. June 9, 2009). District courts "have broad discretion in deciding whether to order a transfer" pursuant to 28 U.S.C. § 1404(a). *In re Volkswagen of Am.*, 545 F.3d 304, 311 (5th Cir. 2008). The statute provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The first question under Section 1404(a) is whether the case "might have been brought in the destination venue." *In re Volkswagen of Am.*, 545 F.3d at 312. It appears

to be undisputed that this case "might have been brought" in either the Northern or Eastern Division.

Next, the party seeking a transfer must show "good cause." *Id.* at 315. Good cause has been defined as follows:

> When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice. Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.

*Id.* To determine whether the transferee venue is clearly more convenient than the plaintiff's chosen venue, the Court considers various factors impacting the private and public interests at play in the case. *Id.*

> The private interest factors are: (1) the relative ease of access to the sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* While these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and none of them carry "dispositive weight." *Id.*

## A.   *Prejudicial Communications & Publicity*

Defendant focuses virtually all of its argument on the fourth private interest

factor – practical problems that make the trial of a case easy, expeditious and inexpensive. Defendant contends that "[m]any residents of the Western Division have been exposed to prejudicial communications that will affect their ability to deliver a verdict based solely on the evidence at trial." First, Defendant cites the number of persons employed by the Natchez Regional Medical Center, representing that it was "likely the largest or one of the largest single non-education employer in Adams County." Next, Defendant speculates that NRMC's Board of Trustees, the Trustees' families, the Adams County Board of Supervisors, and the Supervisors' friends and families have commented to others about the litigation. Defendant also argues that the NRMC had numerous creditors in Natchez, Mississippi, including Adams County.

Additionally, Defendant contends that newspaper publicity about issues related to this case has prejudiced the Western Division jury pool. Defendant attached copies of over seventy newspaper articles that it claims support this argument. It represents that some of the articles contain inaccurate information, specifically noting articles from July 2015 in which Plaintiff, NRMC's Trustee, is quoted as considering potential litigation against its Recovery Audit Contractor ("RAC") for failing to appeal certain Medicare/Medicaid payment determinations. In one opinion piece, the local newspaper opined that the Trustee should "pull[] out all the stops in trying to get everyone who was harmed by the hospital bankruptcy paid." Defendant argues that Plaintiff facilitated these reports by "inject[ing] this specific issue into the public discussion." Defendant also noted at least one article with a quotation from Plaintiff that purportedly contains an inaccurate description of his duties. Likewise, Defendant

3

complains of an opinion piece criticizing "professionals" who allegedly received payments just before the hospital filed its bankruptcy petition, as well as a news article that specifically discusses this lawsuit and describes the allegations against Defendant.[1]

Defendant contends that all of the pretrial publicity discussed above can not be easily addressed in *voir dire*, asserting that potential jurors will have to be questioned *in camera*, to prevent tainting the remainder of the *venire*, and that hypothetical prejudice caused by pretrial publicity can not be cured by potential jurors' assurances that they can be impartial in spite of reading or hearing such publicity. In summary, Defendant argues that "almost everybody in and around Adams County and the neighboring counties" has been and will continue to be incurably prejudiced by news publicity, social media posts, connections to and communications with persons who have an interest in this case, community gossip, and/or their own connection to the hospital or its bankruptcy.

This Court gives certain jury instructions in every civil trial. Among these are an instruction for the jury to base its verdict upon only the evidence presented during the course of trial, and numerous instructions to avoid all news, social media, discussions with friends and family, and/or any other potential source of information

---

[1]Although Defendant attached over seventy newspaper articles to its motion, it only specifically discussed a fraction of them. The Court is not obligated to search the record for evidence in support of a party's argument. *Willis v. Cleo Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). Therefore, while the Court read each newspaper article specifically discussed by Defendant in its motion, it did not search through the remaining articles in search of evidence to support Defendant's motion.

about the trial. The Court presumes that jurors follow the Court's instructions, *see United States v. Anderson*, 755 F.3d 782, 798 (5th Cir. 2014), and the Court is inclined to believe that thorough, careful *voir dire* and firm instructions are sufficient to avoid empaneling jurors whose attitudes and opinions have been substantially prejudiced by the publicity discussed above, and to cure whatever prejudice may nonetheless exist in their minds. Indeed, pretrial publicity is a problem in *many* cases. Likewise, the ubiquity of social media, the internet, and smartphones is an issue the Court must address in *every* case.

The Court also notes that it is not required to draw this case's jury pool from only the Western Division. The statute provides, in relevant part: "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community *in the district or division* wherein the court convenes." 28 U.S.C. § 1861 (emphasis added). Therefore, if Defendant believes that it is impossible to draw a fair jury from the Western Division alone, it is free to file a motion seeking a *venire* drawn from the entire Southern District. The Court can also increase the size of the *venire* regardless of the geographical area from which it is drawn.

In summary, "broad and intensive public awareness" of "notorious events" does not create a presumption of juror prejudice. *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008). The Court employs numerous mechanisms to prevent empaneling a jury that has been prejudiced by pretrial publicity, including *voir dire*, a wide variety of instructions throughout trial, summoning a larger *venire*, and

5

potentially expanding the geographical area from which the *venire* is drawn. The Court believes these methods sufficient to ensure a fair trial. Indeed, Defendant admits in briefing that it is *possible* to empanel an impartial jury from the Western Division; Defendant simply contends that it will be costly to do so. The Court believes that Defendant's estimation of the difficulty is exaggerated, particularly in light of the potential preventative measures discussed above.

## B.   *Remaining Factors*

As for the public interest factors, there are no "administrative difficulties flowing from court congestion." *In re Volkswagen*, 545 F.3d at 315. The "local interest in having localized interests decided at home" would point to the Western Division as the appropriate venue. *Id.*[2] Trying the case in the Northern or Eastern Division will not increase the "familiarity of the forum with the law that will govern the case," or avoid any "unnecessary problems of conflict of laws or in the application of foreign law." *Id.* Therefore, the Court concludes that the public interest factors do not suggest that moving the trial to the Northern or Eastern Division will make the trial more convenient for the Court or parties.

---

[2]Defendant argues that the Western Division has no "local interest" in this litigation because the Plaintiff is a Trustee representing a liquidation trust created by the Bankruptcy Court, which has no location in the Western Division. This argument is sophistic nonsense. The case arises from alleged professional malpractice in auditing the finances of the Natchez Regional Medical Center – a subject that is undoubtedly of particular interest to those in the Western Division. As Defendant notes in briefing, the concept of "local interest" refers "especially in . . . matters of local policy," 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3854 (4th ed. 2017), and this case has local policy implications.

Defendant maintains that the parties would have greater "relative ease of access to the sources of proof" if the case is transferred to the Northern Division. *In re Volkswagen*, 545 F.3d at 631. Defendant argues that both parties – itself and the Trustee – are based in Ridgeland, Mississippi, just north of Jackson, Mississippi, and most of the relevant documents will be located there. In response, Plaintiff claims that most of the relevant documents will be located in Natchez, Mississippi, in the Western Division. But neither party has provided the Court with any reason to credit their representations over the opposing party's. Moreover, the Court anticipates that most – if not all – of the documentary evidence produced in this case will be produced electronically. That being the case, the "relative ease of access to the sources of proof" will likely be the same regardless of venue.

The parties agree that "the availability of compulsory process to secure the attendance of witnesses" is a neutral factor. Therefore, it does not suggest that transferring the case will increase the convenience of the parties.

Finally, Defendant contends that few fact witnesses will be located in Natchez insofar as any questions regarding its actions must be directed to witnesses from its office in Ridgeland. Defendant also argues that most of the testimony will come from retained experts, few of whom will come from Natchez. In the grand scheme of things, Natchez, Hattiesburg, and Jackson are not significantly far from one another in geographical terms. Indeed, parties and witnesses routinely travel far greater distances to testify before the Court. Furthermore, Defendant has not provided the Court with a list of witnesses, and its argument appears to be largely based on

speculation.

### C.    *Conclusion*

For all the reasons provided above, the Court concludes that Defendant has not demonstrated that either the Eastern Division or the Northern Division would be clearly more convenient venues than the Western Division, or that a transfer of venue is necessary to serve the interests of justice. The Motion to Transfer Venue [94] is presently **denied**. However, the trial of this matter is almost a year away, and the parties may obtain additional information relevant to this issue, or the situation may otherwise change between now and then. Accordingly, Defendant may re-urge this motion later in the case, if it wishes to do so.

SO ORDERED AND ADJUDGED, on this, the ___3rd___ day of March, 2016.


___s/Keith Starrett_____
UNITED STATES DISTRICT JUDGE