# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

H. KENNETH LEFOLDT, JR.                                          PLAINTIFF

V.                                      CIVIL ACTION NO. 5:15-CV-96-KS-MTP

DONALD RENTFRO, *et al.*                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court finds that the question of the scope of the arbitration provision in the 2009 engagement letter is **moot**. The Court **grants** Horne, LLP's Motion for Partial Summary Judgment [131] as to Plaintiff's professional malpractice claims for the years 2010, 2011, 2012, and 2013. But the Court **denies** Horne's Motion for Partial Summary Judgment [148] as to Plaintiff's professional malpractice claims for 2009.

## I. BACKGROUND

Both this Court and the Court of Appeals have discussed the factual and procedural background of this case. *See Lefoldt v. Horne, LLP*, 853 F.3d 804 (5th Cir. 2017); *Lefoldt v. Rentfro*, No. 5:15-CV-96-KS-MTP, 2016 U.S. Dist. LEXIS 48463 (S.D. Miss. Apr. 11, 2016). Horne filed a motion to compel arbitration pursuant to three engagement letters detailing the terms upon which Horne would provide auditing services to the Natchez Regional Medical Center ("NRMC"). This Court held that there were no agreements to arbitrate because neither the engagement letters nor the arbitration provisions were spread on the minutes of NRMC's board of trustees. *Lefoldt*, 2016 U.S. Dist. LEXIS 48463 at *8.

Horne appealed, and the Court of Appeals affirmed this Court's decision in part and vacated it in part. *Lefoldt*, 853 F.3d at 808. First, the Court of Appeals held that "because of the minutes requirement, the 2010 and 2012 engagement letters are not contracts to which NRMC is a party, and therefore NRMC is not a party to the arbitration provisions in the 2010 and 2012 engagement letters." *Id*. But because "[t]he minutes of NRMC's board reflect that an agreement with Horne was reached in 2009, . . . the minutes rule does not pertain to that contract's formation." *Id.* Therefore, the Court of Appeals vacated this Court's ruling with respect to the 2009 engagement letter, and remanded with instructions to

> determine the scope of the arbitration agreement – specifically, whether the arbitration agreement in the 2009 engagement letter requires arbitration of the effect of the minutes rule on the validity of the 2009 engagement letter. If the parties did not agree to arbitrate that issue, then the district court should resolve the effect of the minutes rule on the validity of the 2009 letter agreement.

*Id.*

After the Court of Appeals remanded the case, Horne immediately filed a Motion for Partial Summary Judgment [131] as to any malpractice claims arising from the 2010 and 2012 audits, regardless of whether they sound in contract or tort. On May 26, 2017, the Court ordered [146] the parties to submit briefs as to the scope of the arbitration provision in the 2009 engagement letter, as specified by the Fifth Circuit. Horne then filed a Motion for Partial Summary Judgment [148] as to all claims arising under the 2009 engagement letter, regardless of whether they sound in contract or tort.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## III. SCOPE OF THE 2009 ARBITRATION PROVISION

As noted above, the Court of Appeals directed this Court to determine "whether the arbitration agreement in the 2009 engagement letter requires arbitration of the effect of the minutes rule on the validity of the 2009 engagement letter." *Lefoldt*, 853

F.3d at 808. However, the parties now agree that this litigation does not fall within the scope of the 2009 letter's arbitration provision. Therefore, the Court finds that the question of whether the 2009 letter's arbitration provision requires arbitration of the effect of the minutes rule is moot.

### IV. MOTION FOR PARTIAL SUMMARY JUDGMENT [131]

Horne's first Motion for Partial Summary Judgment [131] concerns Plaintiff's professional malpractice claims for the years 2010, 2011, 2012, and 2013. Among other things, Horne argues that Plaintiff can not prove the existence of a professional relationship between it and NRMC and, therefore, can not succeed on any claim of professional malpractice, whether sounding in contract or tort. In response, Plaintiff contends that it need not prove the existence of a written contract to support a claim of professional malpractice.

Accountants may be liable for professional malpractice. *Wirtz v. Switzer*, 586 So. 2d 775, 779 (Miss. 1991), *abrogated on other grounds by Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100 (Miss. 2007). The law governing claims of legal malpractice is "equally applicable to an accountant malpractice case." *Id.* Therefore, to prove claims of accounting malpractice, a plaintiff must demonstrate: "(1) the existence of [a professional] relationship; (2) negligence on the part of the [accountant] in handling the affairs of the client which have been entrusted to the [accountant;] and (3) proximate cause of injury." *Gibson v. Williams, Williams & Montgomery, P.A.*, 186 So. 3d 836, 848 (Miss. 2016). A professional relationship

4

between an accountant and a client arises when:

> (1) a person manifests to [an accountant] the person's intent that the [accountant] provide [accounting] services for the person; and either:
>
>> (a) the [accountant] manifests to the person the consent to do so; or
>>
>> (b) the [accountant] fails to manifest lack of consent to do so, and the [accountant] reasonably knows or should know that the person reasonably relies on the [accountant] to provide services . . . .

*Id.* (quoting *Singleton v. Stegall*, 580 So. 2d 1242, 1244 n. 2 (Miss. 1991)).

"A community hospital board of trustees, as does any public board in the State of Mississippi, speaks and acts only through its minutes." *Wellness, Inc. v. Pearl River Cnty. Hosp.*, 178 So. 3d 1287, 1290 (Miss. 2015). The Court of Appeals explained that the "minutes rule" pertains to both contract formation and enforcement, depending on the context in which it is raised:

> [W]e cannot say that, categorically, the Mississippi minutes requirement pertains to contract formation rather than the validity or enforceability of a contract or certain of its provisions. In some circumstances, the minutes requirement bars proof of some of the terms of a contract that was in fact concluded with a board and the existence of which is reflected [in the] Board minutes. In such situations, the minutes rule is more properly characterized as relating to the validity of the contract terms. In other circumstances, the minutes requirement is more properly characterized as pertaining to contract formation because it results in no formation of a contract at all, or the rule operates to prevent a board from being bound by the actions of a single board member or an agent who acted without authority.

*Lefoldt*, 853 F.3d at 813. The Court of Appeals specifically addressed how the minutes rule functions here: "With regard to the 2010 and 2012 engagement letters, the

5

question of 'whether any agreement between the parties was ever concluded' is presented because neither of these agreements is referenced, at all, in the minutes of NRMC's board." *Id.* (citations omitted).

Plaintiff argues that a written contract is not a prerequisite for a professional malpractice claim. However, the question presented here is not whether NRMC executed a written contract with Horne, but whether NRMC legally entered into any professional relationship with Horne – written, oral, or otherwise. A professional relationship arises when, among other things, a person manifests their intent that an accountant provide accounting services for that person. *Gibson*, 186 So. 3d at 848. Under Mississippi law, a community hospital board of trustees speaks and acts only through its minutes. *Wellness*, 178 So. 3d at 1290. It is undisputed that the NRMC Board's minutes do not reflect that NRMC manifested its intent that Horne provide accounting services for the years 2010, 2011, 2012, and 2013. Therefore, Plaintiff can not legally prove the existence of a professional relationship between NRMC and Horne for those years. The Court grants Horne's Motion for Partial Summary Judgment [131] as to Plaintiff's professional malpractice claims – whether sounding in tort or contract – arising from auditing services allegedly provided in 2010, 2011, 2012, and 2013.[1]

---

[1]To the extent Plaintiff argues that Horne is estopped from arguing that the minutes rule precludes any finding of a professional relationship between it and NRMC for the years 2010, 2011, 2012, and 2013, "Mississippi courts have consistently denied attempts to overcome the minutes rule based on equitable arguments." *Lefoldt*, 853 F.3d at 821. The "law is unsympathetic to arguments based in equity and instead requires private parties to ensure that their contracts are properly recorded in board minutes." *Id.* at 822.

## V. MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO 2009 AUDIT [148]

Horne's second Motion for Partial Summary Judgment [148] pertains to Plaintiff's professional malpractice claims arising from auditing services provided in 2009. The Board's minutes from 2009 provide, in relevant part:

> C. Mock presented the bids for auditor with Horne CPA group costing 48,000.00 and BKD CPA costing 58,000.00 plus expense charges including travel, report processing, etc.
>
> **R. Grennell made the motion to accept Horne CPA Group audit bid with B. Pyron seconding the motion. The motion passed unanimous to accept the Horne CPA Group audit bid at $48,000.00**.

Exhibit B to Motion for Partial Summary Judgment at 2, *Lefoldt v. Rentfro*, No. 5:15-CV-96-KS-MTP (S.D. Miss. June 8, 2017), ECF. No. 148-2. Horne first argues that these terms are not sufficient to constitute a contract, and, therefore, Plaintiff can not prove the existence of a professional relationship. Horne also argues that the terms are not specific enough to be enforceable.

The Court of Appeals already ruled that these minutes "unequivocally reflect that a contract between Horne and NRMC was concluded in 2009 . . . ." *Lefoldt*, 853 F.3d at 814. Therefore, the Court must reject Horne's argument that there was no contract and, consequently, no professional relationship between it and NRMC. The law-of-the-case doctrine prevents this Court from reexamining this issue, as it was already addressed on appeal. *United States v. Teel*, 691 F.3d 578, 582 (5th Cir. 2012).

Moreover, the question of whether the contract or certain terms therein are enforceable is irrelevant to Plaintiff's professional malpractice claim. An action for

professional malpractice "may sound in either tort or contract." *Hutchinson v. Smith*, 417 So. 2d 926, 927 (Miss. 1982). Plaintiff's claim is not premised upon Horne's alleged breach of the parties' contract. Rather, Plaintiff's claim is premised upon Horne's alleged breach of the common law duty to provide professional services with "a reasonable degree of care, skill and dispatch . . . ." *Id.* at 929. To prove a claim of accounting malpractice, Plaintiff need only prove "(1) the existence of [a professional] relationship; (2) negligence on the part of the [accountant] in handling the affairs of the client which have been entrusted to the [accountant;] and (3) proximate cause of injury." *Gibson*, 186 So. 3d at 848. The Court of Appeals settled the first element. *Lefoldt*, 853 F.3d at 814. The remaining elements may be proven even if the parties' contract or certain terms therein are unenforceable.

Horne argues that the 2009 minutes do not provide the terms of any alleged engagement, and, therefore, that it is impossible to determine the scope of its alleged duties. If the Court can not determine the parties' intent from the plain language of a contract, it applies the discretionary canons of contract construction or considers parol evidence. *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 753 (Miss. 2003). Therefore, if the minutes do not provide the scope of the engagement, the Court trusts the parties will provide other evidence of the parties' intent – such as the 2009 engagement letter, or testimony from the persons involved.

## VI. CONCLUSION

For the reasons below, the Court finds that the question of the scope of the arbitration provision in the 2009 engagement letter is **moot**. The Court **grants** Horne,

LLP's Motion for Partial Summary Judgment [131] as to Plaintiff's professional malpractice claims for the years 2010, 2011, 2012, and 2013. But the Court **denies** Horne's Motion for Partial Summary Judgment [148] as to Plaintiff's professional malpractice claims for 2009.

SO ORDERED AND ADJUDGED, on this, the 1st day of December, 2017.

/s/ Keith Starrett  
KEITH STARRETT  
UNITED STATES DISTRICT JUDGE